UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

PHILLIP DEMETRIUS REYNOLDS-BEY, )
a/k/a Phillip Reynolds, #244309,         )
                                                          )
                     Plaintiff,              )         Case No. 1:05-cv-842
                                                          )
v.                                               )         Honorable Robert J. Jonker
                                                          )
SUSANNE E. HARRIS-SPICER, et al.,    )
                                                          )         **REPORT AND RECOMMENDATION**
                     Defendants.            )
_____ )


              This civil rights action brought *pro se* by a state prisoner pursuant to 42 U.S.C. §

1983.  Plaintiff is currently an inmate at the Lakeland Correctional Facility (LCF) located in

Coldwater, Michigan.  (docket # 88).  Plaintiff named sixteen defendants in his amended complaint:

> (1)      Michigan Department of Corrections (MDOC) Hearing Officer Susanne E. Harris-Spicer;
> (2)      Boyer Road Correctional Facility (OTF) Deputy Warden Lori Gidley;
> (3)      OTF Assistant Deputy Warden Laura Krick;
> (4)      OTF Warden Kurt Jones;
> (5)      OTF Inspector James McMillan;
> (6)      OTF Resident Unit Manager Jim Dunigan;
> (7)      OTF Litigation Coordinator Jacque Mallory;
> (8)      OTF Assistant Librarian Terri Halfman;
> (9)      OTF Unit Case Manager Lori Beecher;
> (10)    OTF Corrections Officer Dawn Christiansen;
> (11)    Administrative Assistant Norma Kilough, Correctional Facilities Administration (CFA);
> (12)    Chippewa Correctional Facility (URF) Mailroom Supervisor Cheryl Belonga;
> (13)    URF Guard Nathan Smith;
> (14)    URF and OTF Guard Mark Kingsberry;
> (15)    URF Assistant Deputy Warden John Boytin; and

(16)     URF Sergeant Phillip Gravelle.[1]

(docket # 32).[2]  Plaintiff seeks an award of monetary damages against defendants in their individual capacities.  (*Id.* ¶¶ 2-17).  The matter is currently before the court on cross-motions for summary judgment by plaintiff (docket # 79) and all defendants other than defendant Kingsberry (docket # 67, 73).  For the reasons set forth herein, I recommend that defendants' motions for summary judgment be granted[3] and that plaintiff's motion for summary judgment be denied.

## Applicable Standards

### A.     Summary Judgment Standard

When reviewing cross-motions for summary judgment, the court must assess each motion on its own merits.  *See Federal Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Group*, 415 F.3d 487, 493 (6th Cir. 2005); *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304, 309 (6th Cir. 2005).  "'[T]he filing of cross-motions for summary judgment does not necessarily mean that an award of summary judgment is appropriate.'" *Bowling Irrevocable Trust*, 410 F.3d at 309 (quoting *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir.

---

[1]Two defendants have changed their names: Jacque (nee Mallory) Koenigsknecht and Cheryl (nee Belonga) Soeltner.  (docket # 67, ¶ 1).  The names Mallory and Belonga are used throughout this report and recommendation because they correspond to names appearing in plaintiff's amended complaint.  Similarly, the report and recommendation will refer to defendant "McMillan" rather than "McMillian" and defendant "Boytin" rather than "Boynton."  (*Id.*).

[2]Plaintiff's original complaint named twenty-seven defendants.  On April 10, 2007, the court entered an order dismissing plaintiff's claims against the eleven defendants named in the initial complaint, but not named in the amended complaint.  (docket # 33).

[3]Defendant Kingsberry did not move for summary judgment.  If this report and recommendation is adopted,  plaintiff's only remaining claims will be his Count I retaliation claims against defendant Kingsberry.

-2-

2004), *cert. denied*, 545 U.S. 1128 (2005)); *see Appoloni v. United States*, 450 F.3d 185, 189 (6th Cir. 2006), *cert. denied*, 127 S. Ct. 1123 (2007).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006); *Briggs v. Potter*, 463 F.3d 507, 511 (6th Cir. 2006). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Swiecicki v. Delgado*, 463 F.3d 489, 492 (6th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Pack v. Damon*

*Corp.*, 434 F.3d 810, 814 (6th Cir. 2006).  The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990).  "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'"  *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252); *see Kessler v. Visteon Corp.*, 448 F.3d 326, 329 (6th Cir. 2006); *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).  "A nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part on credibility considerations.  Instead, the nonmoving party must present evidence to defeat a properly supported motion for summary judgment.  The party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or to refute the proof of the moving party in some material portion, and the opposing party may not merely recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof."  *Fogerty v. MGM Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004), *cert. denied*, 543 U.S. 1120 (2005).

A moving party with the burden of proof (typically the plaintiff) faces a "substantially higher hurdle."  *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  As shown above, the moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial.  "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules:  Defining*

*Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The United States Court of Appeals for the Sixth Circuit has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### B.      Standards Applicable to Affirmative Defense of Failure to Exhaust Remedies

Defendants have asserted the affirmative defense of plaintiffs' failure to exhaust administrative remedies.  A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies.  42 U.S.C. § 1997e(a); *see Jones v. Bock*, 127 S. Ct. 910, 923 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734.  In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 127 S. Ct. at 921.  Moreover, the burden is on defendants to show that plaintiff failed to properly exhaust his administrative remedies.  The Supreme Court reiterated that "no unexhausted claim may be considered."  127 S. Ct. at 923.  The

Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims.  127 S. Ct. at 923-26.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law.  *Jones v. Bock*, 127 S. Ct. at 922-23.  In *Woodford v. Ngo*, 126 S. Ct. 2378 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 126 S. Ct. at 2387.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."  *Id.* at 2386.  Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a § 1983 action in federal court.  *Id.* at 2382-93; *see* 42 U.S.C. § 1997e(a).

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003),[4] sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.  Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ R.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ R, X.  The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be

_____

[4]On July 9, 2007, the MDOC amended Policy Directive 03.02.130.  However, the 2003 version of the policy directive (docket # 68, Ex. 1) was in effect at all times relevant to plaintiff's claims.

limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance,[5] the claims against that individual are not properly exhausted. *See Davis v. Straub*, No. 1:07-cv-156, 2008 WL 696603, at * 5 (W.D. Mich. Mar. 13, 2008); *Price v. Caruso*, No. 1:07-cv-117, 2008 WL 441254, at * 1 (W.D. Mich. Feb. 14, 2008); *Walker v. Hoffbauer*, No. 2:06-cv-216, 2007 WL 2710823, at *3-4 (W.D. Mich. Sept. 13, 2007); *Edwards v. Burnett*, No. 05-cv-73790, 2007 WL 1768770, *2 (E. D. Mich. June 15, 2007).

The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy. Generally, the Step II respondent is the warden. The deputy warden may respond if the warden supervises more than one institution and other individuals may be responsible for the Step II response depending on the nature

---

[5] A prisoner must also pursue appeals of his grievance through Step III of the administrative process. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir.1999) ( "[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see also Booth v. Churner*, 532 U.S. at 741 n. 6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); *Jones v. Douglas*, 108 F. App'x 254, 256 (6th Cir.2004).

of the prisoner's grievance.  *Id.* at ¶ FF.  If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH.  The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.  Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process.  *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved ...." *Id.*

In addition, the grievance policy provides that, where the grievance alleges "racial or ethnic discrimination or staff brutality or corruption," the grievance may be submitted directly to Step III. *Id.* at ¶ S. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

## Discussion

### I.   Count I

#### A.   Allegations

Count I of plaintiff's amended complaint is a retaliation claim against non-moving defendant Kingsberry.  Kingsberry allegedly subjected plaintiff to a racial epithet on June 21, 2004 at the Boyer Road Correctional Facility (OTF) while "directly referring" to a June 4, 2001 order of United States Magistrate Judge Timothy P. Greeley entered in case number 2:01-cv-43 (W.D. Mich.). (docket # 32, ¶¶ 27, 57).  The "order" referenced in plaintiff's amended complaint is actually

Magistrate Judge Greeley's June 4, 2001 report and recommendation. (docket # 1, Appendix B, Ex. 1). Plaintiff further alleges that later in the afternoon on June 4, 2004, defendant Kingsberry subjected plaintiff to a search as plaintiff was exiting the prison's "chow hall." (docket # 32, ¶ 57(b)).

Plaintiff further alleges in Count I that OTF Warden Jones, Deputy Warden Gidley, and Assistant Deputy Warden Krick "retaliated" against plaintiff for his protected conduct of filing the above referenced lawsuit and administrative grievances by not approving plaintiff's request for a transfer from OTF. (*Id.,* ¶ 57).

### B.    Exhaustion of Administrative Remedies

Defendants Jones, Gidley, and Krick assert that plaintiff did not properly exhaust his Count I "retaliation" claims against them. Plaintiff argues that he exhausted these retaliation claims in Grievance Number OTF-2004-05-275-24A. I find that plaintiff did not properly exhaust his Count I retaliation claims against Jones, Gidley, and Krick, and that defendants are entitled to judgment in their favor as a matter of law.

By way of background, on March 16, 2001, while plaintiff was an inmate the Chippewa Correctional Facility (URF) located in Kincheloe, Michigan in Michigan's Upper Peninsula, plaintiff filed the lawsuit of *Phillip Demetrius Reynolds v. N. Smith, et al.*, No. 2:01-cv-43 (W.D. Mich.). The named defendants were "Corrections Officer N. Smith, Sergeant Gravelle, Captain John Doe, Assistant Deputy Warden John Boytin, Mail Room Supervisor Cheryl Belonga, Deputy Warden G. McQuiggan, Warden Fabian Lavigne, the Michigan Department of Corrections (MDOC) and the MDOC Director Bill Martin." (docket # 1, Appendix B, Ex. 1). On June 4, 2001,

Magistrate Judge Greeley issued a report and recommendation on initial screening (docket # 1, Ex. 1) that recommended dismissal of the majority of plaintiff's claims. Officer Kingsberry was never a defendant in the *Reynolds v. N. Smith et al.*, lawsuit. The only references to Kingsberry in the report and recommendation are found on page two in paragraph two where it relates plaintiff's assertions that on January 17, 2001, N. Smith called Kingsberry by walkie-talkie and that "Smith was later observed with Botos and Kingsberry in possession of the plaintiff's legal transcripts in the counselor's office and placing them in the Guard Desk." (*Id.*). On November 9, 2001, United States District Judge Gordon J. Quist overruled plaintiff's objections and adopted the report and recommendation. Judge Quist entered an order dismissing all plaintiff's claims with the exception of claims against defendants N. Smith, Boytin, Gravelle, and Belonga. (*See* docket # 1, Appendix B, Ex. 1). In late December 2001, the defendants filed a motion to dismiss. Shortly thereafter, on January 4, 2002, plaintiff filed a frivolous motion attempting to have Michigan's Attorney General disqualified from representing the defendants and asking that liens be placed on the defendants' property. On January 17, 2002, Magistrate Judge Greeley denied plaintiff's motion. On February 26, 2002, Judge Quist entered his order denying plaintiff's appeal of Magistrate Judge Greeley's decision. On July 17, 2002, the court dismissed plaintiff's claims against Boytin and Belonga. On August 26, 2003 the court granted the motion for summary judgment by the remaining defendants and entered a final judgment. On April 8, 2004, the United States Court of Appeals for the Sixth Circuit issued its decision affirming this court's judgment. *See Reynolds v. Smith, et al.*, No. 03-2201 (6th Cir. Apr. 8, 2004).

In early May 2004, plaintiff was transferred from the Carson City Correctional Facility (DRF) to the Boyer Road Correctional Facility (OTF). On May 18, 2004, plaintiff filed

grievance number OTF-04-05-0275-24A against "Shift Commander Feinn, Second Shift Commander John/Jan Doe, Third Shift Commander John/Jan Doe, Warden Kurt Jones, ADW Podelo, Deputy Warden Jan Doe, Inspector John/Jan Doe, Director Caruso, RUM for G Unit John Doe, ARUS for G. Unit Jan Doe, C/O Kingsberry, RUM Tabor, Unknown Transfer Coordinator John/Jan Doe, ADW of Operation[s] John/Jan Doe, [and] Warden['s] Assistan[t] Schaefer." (docket # 32, Appendix A). Plaintiff wrote that his grievance was "ABOUT BEING AT [THE] SAME FACILITY AS [A] STAFF MEMBER WHO [HAD BEEN] PART OF [A] LAWSUIT," ostensibly referring to Officer Kingsberry. The body of plaintiff's grievance stated as follows:

> On May 6, 2004, this Citizen transferred to OTF from DRF, subsequently, on May 8, 2004, the Citizen was proceeding to evening chow and observed C/O Kingsberry was standing in front of the door. The reason this [is] important, will be fully explainable [sic] in Exhibit "1."
>
> On May 11, 2004 the Citizen spoke with the RUM for G Unit and explained that Guard Kingsberry and this Citizen has civil litigation pending.[6] Where this Guard is part of such action and the previously [sic] history between both persons, [it] support[s] a position that it would be very inappropriate for either of them to be at the same facility. [See exhibit "1" -- Report and Recommendation from Federal Court].
>
> This Citizen is very fearful of this staff member and has witnessed the numerous unlawful activities of this Kingsberry, whom the Citizen was the target of some of these activities while at URF. After showing the RUM [the] legal documents supporting this conclusion [, t]his Citizen explained to the RUM, that he [plaintiff] should leave this facility. The RUM, seemingly agreed in [sic] thought, that something should be done ASAP. He contacted the Shift Commander, who[] took down the Citizen's name and number but said everything [was] fine.
>
> The legal document can be affirmed by the State Attorney General's Office and Christine Campbell, who[] works in this office and if this person knew this Citizen was here, with Guard Kingsberry, [t]his Citizen would be immediately transferred and Lansing prison

---

[6]Plaintiff's assertion that he had civil litigation pending against Kingsberry in *Reynolds v. N. Smith, et al.* was patently false. Kingsberry was never a party to the lawsuit, a final judgment had been entered in this court more than a year earlier, and the Court of Appeals had affirmed this court's judgment.

-11-

officials knew that such existed [sic] the same would be done.  At this time, Guard Kingsberry and this Citizen ha[ve] not had any direct contact but once this Citizen['s] identity becomes known, that he his here[, i]t will be only a matter of time before retaliatory activity will be in play.

<u>RELIEF</u>

This Citizen request[s] to be placed in protection for my safety, until a better alternative is available, or he is transferred back to Bellamy Creek IBC, or some other place ASAP.  Please act quickly and this Citizen had to place this upon the record due to the gravity of the issue.

(docket # 32, Appendix A).

Assistant Resident Unit Manager B. Nicholson was the author of the Step I response,

rejecting plaintiff's argument that he should not have been transferred to OTF.  Plaintiff was

classified as a Level II prisoner and his placement at OTF was appropriate:

Prisoner grievance was reviewed.  Prisoner was interviewed.  Prisoner currently screens at level II/I with 0 points.  He was transferred to Boyer Road Correctional Facility in accordance with PD 05.01.140 Prisoner Placement and Transfer.  Prisoner Reynolds is properly placed.

(docket # 32, Appendix A).

Plaintiff's statement of his reason for a Step II appeal was primarily an argument that

because plaintiff's grievance had mentioned "RUM for G Unit John Doe" that RUM Nicholson

should not have been the author of the Step I grievance response:

This Citizen first claims PD 03.02.130 was violated because it makes perfectly clear that a[n] employee cannot be part of the investigation process, if h[e] is incorporated within the grievance.  On the first paragraph explaining what this Citizen did to resolve the problem, this Citizen made known to the RUM and ARUS for G Unit were being grieved and incorporated into the complaint, and this Citizen finds it inappropriate for them to be part of the grievance process.  Even within the body of the complaint, this Citizen explained how he spoke with the RUM for G Unit and showed him the documentation concerning the problem.

(docket # 32, Appendix A).  Plaintiff represents to the court that his Step II grievance appeal

included a second page which stated as follows:

-12-

Lastly, the respondent mentions that Reynolds [] currently screens at II/I and is properly placed at OTF.  This Citizen['s] complaint [does] not dispute his screening placement at a[] level II facility and his complaint does not speak of this.  Please read the court order and grievance because it[']s apparent neither respondent would address the actual merit of the complaint.  Reynolds supported his grievance with highlighted portion[s] of a federal court order explaining why this Citizen should be transferred from Carson City, away from a staff member now working here.

This Citizen seeks a quick response and this Citizen is already on the transfer list for Lapeer but please make a quick response either denying or transferring me ASAP.

(docket # 32, Appendix A).  Warden Kurt Jones was the author of the Step II grievance response.

The Step II response reiterated that plaintiff's placement at OTF was consistent with plaintiff's

security classification:

The main thrust of this grievance issue is whether or not you were properly transferred and confined in the appropriate level.  Investigators Nicholson and Lambrecht clearly indicate you are currently screened level II/I with zero points.  You are properly housed at a level II security facility.  Your transfer from DRF was clearly under the guidelines of PD 05.01.140.  I advised you that placement and transfers are not at the discretion of the prisoner.  As there has been no violation of the aforementioned policy by staff involved, I return your appeal as denied.

(docket # 32, Appendix A).

Plaintiff's statement of his reason for an appeal to Step III emphasized that plaintiff

was seeking "protection" from Kingsberry:

This complaint is simple to understand and just recently June 21, 2004 time 6:00-to-6:05 p.m., Guard KINGSBERRY stopped twice and threatened this American Citizen.  A separate grievance is being filed but I wanted to include this in the record and this Citizen will have his Family contact the Governor, Director and U.S. Attorney General about the problem because it continues with this same KINGSBERRY, now at OTF and Mr. Reynolds seeks to [be] placed in protection immediately.

-13-

(docket # 32, Appendix A).[7]  On September 22, 2004, plaintiff's Step III appeal was denied.  The

Step III response advised plaintiff that if he had a legitimate need for protection, he should contact

the appropriate unit manager:

> The grievant alleges that following his transfer to OTF on 5-6-04, he discovered that an officer with whom he has a "previous history" at another facility and who is involved in pending civil litigation is currently working at OTF.  Grievant seeks as relief to be placed into protection or to be transferred.
>
> This investigator has reviewed the record presented with the appeal to Step Three.  All relevant information was considered.  Based on this review, this writer finds the responses provided Steps One and Two adequately address the merits of the main issue grieved.
>
> The record presented with the appeal does not suggest that further action is justified at this level.  The grievant's most recent security classification review screen, dated 3-3-04, indicates that he is a Level II prisoner housed in a Level II facility, in accordance with PD 05.01.130 "Prisoner Security Classification" and PD 05.01.140 "Prisoner Placement and Transfer".  There is no requirement in policy that a prisoner be separated from every staff person with whom he has pending litigation.  It is noted that the officer in question is not a named defendant in litigation referenced by the grievant.
>
> The grievant has not shown a violation of policy regarding his placement at OTF.  Based on the above finding, we deny the grievance appeal.  The grievant is advised that if he has a legitimate need for protection he should contact the appropriate unit manager.

(docket # 32, Appendix A).

It is pellucid that Grievance Number OTF-04-05-0275-24A did not exhaust plaintiff's

claims that defendants Jones, Gidley, and Krick retaliated against plaintiff in response to plaintiff's

---

[7]On June 29, 2004, plaintiff filed Grievance Number OTF 2004-06-361-18B against Kingsberry.  (docket # 32, Ex. B).  Plaintiff stated that on June 21, 2004, while plaintiff was entering the "chow hall" defendant Kingsberry "confronted this American by yelling in this [c]itizen's ear from less than 2 feet from behind."  The grievance further alleged that as he was exiting the chow hall defendant Kingsberry subjected plaintiff to a search in which plaintiff had been required to empty his pockets when plaintiff left the prison's dining hall.  Plaintiff claimed that Kingsbury's actions had been in retaliation for case number 2:01-cv-43 (W.D. Mich).  Grievance Number OTF 2004-06-361-18B did not exhaust any of plaintiff's claims against the moving defendants.

-14-

protected conduct.[8]  Plaintiff did not properly exhaust his retaliation claims against these defendants, and the time within which to do so has long since passed.  Defendants Jones, Gidley and Krick are entitled to judgment in their favor as a matter of law on plaintiff's Count I claims, dismissing these claims with prejudice for failure to exhaust.

## II.      Count II

### A.      Allegations

Count II of plaintiff's amended complaint is another retaliation claim.  Count II is rooted in plaintiff's July 2004 major misconduct conviction for possession of forged documents. (docket # 80, Ex. 3).  Plaintiff alleges retaliation by the hearing officer who found plaintiff guilty of the major misconduct charge (Hearing Officer Susanne Harris-Spicer), the MDOC employee who filed the major misconduct charge (Assistant Librarian Terri Halfman), the inspector who investigated the charge (James McMillian) and OTF's warden, deputy warden, and assistant deputy warden (defendants Jones, Gidley, and Krick).  (docket # 32, ¶¶ 58-59).  Plaintiff believes that he

---

[8]Plaintiff has never enjoyed the right to be housed in the prison of his choice and he cannot not manufacture such a right by filing lawsuits against particular prison guards. *See   Meachum v. Fano*, 427 U.S. 215, 224 (1976); *accord  Myles v. Crowley*, No. 98-1908, 1999 WL 1313, at *1 (6th Cir. Nov. 4, 1999)("Myles's claim that the denial of his transfer request constituted a violation of his right to due process is frivolous because there is no right under federal law giving a prisoner any choice concerning the facility where he will be incarcerated.")(citing *Meachum*).

and members of his family[9] were wrongfully implicated in an "escape plot" in connection with this major misconduct conviction.  (*Id.*,  ¶¶ 28-33, 58-59).

   B.  <u>Exhaustion of Administrative Remedies</u>

     It is undisputed that plaintiff did not file a timely grievance regarding his Count II claims.  Plaintiff argues that all misconduct charges against him and related proceedings (docket # 80, Exhibits 2-10) should be considered non-grievable under policy directive 03.02.130 ¶ F. "Plaintiff interprets non-grievable issues not only to mean incidents involving a prisoner receiving a misconduct report and subsequent hearing decision, but in this instance, those circumstances involved in the current Defendants generating falsified and/or issuing retaliatory misconduct reports, resulting in a hearing determination."  (docket # 79 at 3).  Plaintiff's argument cannot withstand scrutiny.  Policy Directive 03.02.130 ¶ F limited the non-grievable issue to "Decisions made in hearings conducted by hearing officers."  Plaintiff's attempt to challenge defendant Harris-Spicer's July 2004 decision finding him guilty of a major misconduct of possession of forged documents is indeed non-grievable.  It is patent, however, that the hearing officer is entitled to absolute judicial

---

  [9]*Pro se* litigants may not represent others.  Plaintiff is limited to asserting his own individual claims.  *See* 28 U.S.C. § 1654.  All allegations in plaintiff's amended complaint attempting to assert claims on behalf of members of his family have been disregarded.

  Claim preclusion stemming from the unsuccessful lawsuit by Patricia, Reynolds, Bobby Reynolds, Jr. and Christopher Louis Reynolds would bar their claims against defendants.  On August 5, 2005, plaintiff filed a lawsuit on behalf of himself and members of his family in the United States District Court for the Eastern District of Michigan.  The case was transferred to this court.  Prisoner Reynolds's claims were dismissed for lack of exhaustion required by the Prison Litigation Reform Act and Sixth Circuit standards then in effect.  *See Reynolds, et al., v. Harris-Spicer, et al.*, 1:05-cv-527 (W.D. Mich.).  Plaintiff's family members continued the lawsuit without Phillip Reynolds-Bey as a named party.  On July 26, 2007, the court entered a final judgment in favor of defendants.  Patricia Reynolds filed a notice of appeal.  On September 26, 2007, the United States Court of Appeals for the Sixth Circuit dismissed her appeal for want of prosecution.

immunity on her decision. *See Shelly v. Johnson*, 849 F.2d 228, 229-30 (6th Cir. 1988); *Fitts v. Abramajtys*, 62 F. App'x 112, 114 (6th Cir. 2003); *Williams v. McGinnis*, 57 F. App'x 662, 664 (6th Cir. 2003); *Clemons v. Cook*, 52 F. App'x 762, 763 (6th Cir. 2002).

Defendants Halfman, McMillan, Jones, Gidley, and Krick did not make the hearing decision, and their purported actions in connection with the major misconduct charge of possession of forged documents were grievable. Plaintiff's Count II retaliation claims against these defendants are not properly exhausted.

Alternatively, defendants Harris-Spicer, Halfman, McMillan, Jones, Gidley, and Krick are entitled to judgment in their favor as a matter of law because plaintiff's Count II claims necessarily imply the invalidity of plaintiff's major misconduct conviction and punishment imposed. Plaintiff's Count II retaliation claims are not cognizable under § 1983 until the plaintiff's conviction for possession of forged documents has been overturned. Plaintiff did not pursue an appeal of his major misconduct conviction. The Supreme Court has held that a claim for damages that necessarily implies the invalidity of a prison misconduct conviction or the punishment imposed is not cognizable under § 1983 until the conviction has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (addressing allegations of deceit and bias on the part of the decisionmaker in a misconduct hearing). The Court relied upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original).

-17-

In *Muhammad v. Close*, the Supreme Court clarified that *Edwards* requires the favorable termination

of a disciplinary proceeding before a civil rights action may be filed only in cases where the duration

of the prisoner's sentence is affected.[10]  540 U. S. at 754-55; *see Johnson v. Coolman*, 102 F. App'x

460, 461 (6th Cir. 2004).   In other words, *Edwards* applies where a plaintiff has lost good time as

the result of the misconduct conviction.   "[A] state prisoner's § 1983 action is barred (absent prior

invalidation)-no matter the relief sought (damages or equitable relief), no matter the target of the

prisoner's suit (state conduct leading to conviction or internal prison proceedings)- if success in that

action would necessarily demonstrate the invalidity of confinement or its duration."  *Wilkinson v.*

*Dotson*, 544 U.S. 74, 81-82 (2005).  Thus, where a prisoner's claim of unfair procedures in a

disciplinary hearing necessarily implies the invalidity of the deprivation of good-time credits, his

claim is not cognizable under § 1983.  544 U.S. at 82; *see also Bailey v. McCoy*, No.98-1746, 1999

WL 777351, at * 2 (6th Cir. Sept. 21, 1999) (collecting Sixth Circuit decisions applying *Edwards*

to procedural due process challenges); *accord Crump v. Perttu*, No. 2:06-cv-266, 2008 WL 680402,

at * 6-7 (W.D. Mich. Mar. 7, 2008).  Under Michigan law, a prisoner loses good time credits for the

month of his major misconduct disciplinary conviction.  *See* MICH. COMP. LAWS § 800.33.  In

addition, the warden may order forfeiture of previously accumulated credits in cases.  *Id.*  Plaintiff

---

[10]On July 11, 1995, the Saginaw County Circuit Court sentenced plaintiff to 10-to-15 years' imprisonment following plaintiff's plea of *nolo contendre* to the charge of breaking an entering an occupied dwelling. The Michigan Court of Appeals upheld this conviction and sentence, *see People v. Reynolds*, No. 187912, 1997 WL 33353284 (Mich.Ct.App. Mar.18, 1997), and the Michigan Supreme Court denied leave to appeal, *see People v. Reynolds*, 456 Mich. 916, 572 N.W.2d 660 (Mich. Dec. 30, 1997).   Later, a Livingston County jury found plaintiff guilty of breaking an entering an occupied dwelling with intent to commit a larceny. Plaintiff received a sentence of 13 1/2-to-22 1/2 years' imprisonment on his Livingston County conviction. The Michigan Court of Appeals upheld this conviction and sentence.  *People v. Reynolds*, No. 201838, 1999 WL 33435653 (Mich. Ct. App. Sept. 28, 1999).

does not dispute that he forfeited good time credit for the month of his conviction.  Accordingly, plaintiff's Count II claims remain noncognizable under § 1983 because a ruling on the retaliation claims would, if established, necessarily imply the invalidity of his disciplinary conviction.  *See Shavers v. Stapleton*, 102 F. App'x 900, 901 (6th Cir. 2004).

In summary, defendants are entitled to judgment in their favor as a matter of law on plaintiff's Count II claims.

### III.    Count III

A.    Allegations

In Count III, plaintiff alleges retaliation by defendants Harris-Spicer, Halfman, McMillan, Jones, Krick, Beecher, Dunigan, Christiansen, Mallory, Gidley, and Killough during the period of September 2004 through early December 2004.  Plaintiff alleges that he "engaged in a protected act by petitioning the MDOC Internal Affairs, MDOC prisoner Affairs and Director Caruso [on] August 11, 13, 14, and 26, 2004 . . . ."  (docket # 32, ¶ 61(a)).  According to plaintiff, this correspondence requested an investigation of plaintiff's claim that Harris-Spicer, Halfman, McMillan, and Krick had "fabricated the existence of an escape plot." (*Id.*, ¶ 61(d)).  Plaintiff alleges that on September 2, 2004, Resident Unit Manager Jim Dunigan, Unit Case Manager Lori Beecher, Officer Christiansen, and CFA Administrative Assistant Norma Killough of MDOC's "Central Office" in Lansing purportedly subjected plaintiff to a "mock pack-up" and read plaintiff's "legal pleadings" and "attorney-client correspondence" from 8:50 a.m. to 2:00 p.m.  (*Id.*, ¶¶ 7, 10, 11, 13, 35, 36, 61(b))).  Plaintiff alleges that "court pleadings" were confiscated (*Id.*, ¶ 61(d)) and that the September 2, 2004 "pack-up [had been] for the express purpose of an unauthorized censorship of

-19-

'attorney-client correspondence[]' simply because Plaintiff [had] engaged in protected speech with [] MDOC Internal Affairs, MDOC Prisoner Affairs and Director Caruso []." (*Id.*, ¶ 61(b)). Plaintiff further alleges that in late October and early November 2004, defendants Christiansen, Dunigan, and Beecher "comment[ed] on Plaintiff's mother['s] involvement in his escape and how it could be fixed without his mother being arrested, if Plaintiff agreed to 'lie' and clear up the mistake that was made." (*Id.*). The following allegations appear in paragraph 61(c) of plaintiff's amended complaint:

> c). Plaintiff suffered adverse actions by Defendant[s] BEECHER, CHRISTIANSEN, DUNIGAN, MALLORY, KILLOUGH, GIDLEY, KRICK, JONES and MCMILLAN, when they collectively and/or individually condoned, authorized and or encouraged, through action, inaction, and/or omission [sic] to coerce a statement that, if plaintiff agreed to "lie" and clear up the mistake that was made, his mother would not be arrested and Defendant[s] BEECHER, CHRISTIANSEN, DUNIGAN, MALLORY, MCMILLAN, HARRIS-SPICER, JONES, GIDLEY, KILLOUGH and KRICK proceeded to inflict further unconstitutional harassment against Plaintiff because he criticized the fabrication of a prison escape plot that supposedly involved his family and himself[.]

(*Id.*, ¶ 61(c)).

### B.    Exhaustion of Administrative Remedies

Plaintiff waited until February of 2005 to begin filing grievances regarding these alleged events in 2004. Six grievances are relevant to the issue of whether plaintiff exhausted his Count III claims:

> (1)    OTF-05-02-00090-28E (filed February 8, 2005);
> (2)    OTF 05-02-00091-28E (filed February 8, 2005)
> (3)    OTF-05-02-00092-28E (filed February 8, 2005);
> (4)    OTF 05-02-00093-28E (filed February 8, 2005);
> (5)    OTF 05-03-00153-28E (filed March 3, 2005); and
> (6)    OTF 05-06-00397-28E (filed June 27, 2005).

For the reasons set forth below, his grievances were untimely.

-20-

(1)     Grievance Number OTF-05-02-00090-28E

Plaintiff filed Grievance Number OTF-05-02-00090-28E on February 8, 2005 against

MDOC's Director Patricia Caruso, Deputy Director Dennis Straub, OTF Warden Kurt Jones, ARUS

Beecher, Corrections Officers Green, Klinworth, Kingsberry, Christiansen, and Tabor, RUM Jim

Dunigan, Litigation Coordinator Jackie Mallory, Deputy Warden Gidley, ADW Krick, Inspector

McMillan, Hearing Officer Susan Harris-Spicer, Hearing Investigator Eniker, Michigan's Attorney

General Mike Cox and Governor Jennifer Granholm, Hearing Division Supervisor John Stapleton,

Librarian Halfman, and "7 unknown John/Jan Doe(s)."    (docket # 1, Appendix B).  This grievance

requested an award of monetary damages and stated, "Warden Kurt Jones in and October and

November 2004 Memorandum mentioned that staff was not responsible for the intentional

destruction of my legal affidavit's [sic] of prisoner[s] Guyton, Morgan and various exhibits filed in

connection with my federal lawsuit in case No. 2:01-cv-[4]3.  In addition, there are unaccounted for

legal documents prison officials refuse to turn over."  The grievance was rejected as untimely at Step

I because plaintiff had filed the grievance more than five months after the deadline established by

Policy Directive 03.02.130.  Plaintiff's Step II and III appeals were denied on the same basis.

(docket # 1, Appendix B).

(2)     Grievance Number OTF 05-02-00091-28E

The second grievance plaintiff filed on February 8, 2005 was Grievance Number OTF

05-02-00091-28E.  (docket # 1, Appendix B).  This grievance named the same individuals as the

grievance discussed in the preceding paragraph.  Plaintiff indicated that he was attempting "to appeal

an administrative hearing" that ARUS Beecher had conducted in December 2004.  Plaintiff's

grievance stated that on December 1, 2004, "ARUS Beecher proceeded to conduct an administrative

hearing on various legal pleadings confiscated by RUM Dunnigan, Guard Christainsen and ARUS

Beecher in September 2004. Mr. Reynolds disagrees with the decision rendered in 5 minutes and

requests that the individual property [sic] be held pending appeal to federal court, because my legal

pleadings were taken to retaliate against me for my legal activities against MDOC prison officials

in 2001-thru-2004." (*Id.*). This grievance was rejected as untimely under Policy Directive

03.02.130. The rejection of the grievance on this basis was upheld at Steps II and III. (docket # 1,

Appendix B).


(3)     Grievance Number OTF-05-02-00092-28E

The third grievance plaintiff filed on February 8, 2005 was Grievance Number OTF-

05-02-00092-28E. (docket # 1, Appendix B). It was a grievance against Director Caruso, Deputy

Director Straub, Warden Jones, ARUS Beecher, Corrections Officers Green and Klinworth, RUM

Dunigan, Litigation Coordinator Mallory, Deputy Warden Gidley, Assistant Deputy Warden Krick

and Hearing Division Supervisor "John/Jan Doe." Plaintiff's grievance asserted that his December

1, 2004 administrative hearing stemmed from the confiscation of numerous legal pleadings by ARUS

Beecher, RUM Dunigan and Guard Christiansen. Plaintiff claimed that during the course of the

December 1, 2004 hearing "ARUS inappropriately gave Mr. Reynolds a direct order to take legal

documents." (*Id.*). Plaintiff claimed that the major misconduct citation that had been issued against

him on December 1, 2004, had been "written in retaliation for Mrs. Patricia Reynolds['s] and

prisoner Reynolds['s] activity of complaining to various public officials regarding the treatment they

both were receiving. Mr. Reynolds was found not guilty of this infraction and there was no

-22-

justification for ARUS Beecher to conspire with various prison officials at OTF to commit this injury

upon Mr. Reynolds." (*Id.*).  Plaintiff's grievance concluded with a request for $10,000 in damages.

(*Id.*).  This grievance was rejected because it was untimely.  (*Id.*).  Plaintiff's Step II and III appeals

were denied on the same basis.  (*Id.*).

(4)    <u>Grievance Number OTF 05-02-00093-28E</u>

Plaintiff's fourth grievance, filed on February 5, 2005, was Grievance Number OTF

05-02-00093-28E.  This grievance named the same individuals as Grievance Numbers OTF-05-02-

00090-28E and OTF 05-02-00091-28E.  This grievance stated as follows:

> On September 14, 2004, <u>#244309</u> was a target for retaliation by unit staff with the fabricated issuance of an UNAUTHORIZED OCCUPATION OF A CELL OR ROOM -- ACCOMPLICE ticket.  Furthermore, OTF prison officials condoned the activity of RUM Dunigan to fabricate [] a misconduct infraction.  The record shows that Mr. Reynolds sought for Warden Jones, Director Caruso, and Deputy Director Straub to intervene upon the behavior in question [sic] but they simply turned a blind eye to the activity.  I was subsequently found not guilty of the ticket October 5, 2004.
>
> Witness <u>NELOMS</u> #226276 is quoted by Attorney HARRIS-SPICER stating:
>
> Prisoner Neloms said "<u>that he has been told that prisoner Reynold is the actual target here - not him</u> . . . [See Report dated October 5, 2004].
>
> <u>RELIEF REQUESTED</u>
>
> I seek compensation in the amount of $50,000 dollars jointly and severally, and punitive damages in the amount of $150,000 dollars.

(docket # 1, Appendix B).  Plaintiff's grievance was rejected as untimely at Step I because it had

been filed more than four months after the deadline established by Policy Directive P.D. 03.02.130.

Plaintiff's Step II and III appeals were denied on the same basis.  (*Id.*).

(5)    Grievance Number OTF 05-03-00153-28E

On March 3, 2005, plaintiff filed Grievance Number OTF 05-02-00153-28e. (docket

#32, Ex. 11).  The grievance was labeled as a "complaint Regarding Violation of Protected Activity.

Plaintiff's grievance was against the following laundry list of individuals:

> This grievance is filed to exhaust administrative remedies against PATRICIA CARUSO Director of MDOC, DENNIS STRAUB Deputy Director, N. SMITH Guard/URF, SGT. GRAVELLE URF, CHERYL BELONGA Mailroom and Records Office Supervisor, ADW JOHN BOYTIN Deputy Warden URF, JACKIE MALLORY Litigation Coordinator OTF/DRF, KURT JONES Warden DRF/OTF, GUNDY Deputy Warden OTF, ADW KRICK Deputy Warden OTF, N. KILOUGH Central Office Lansing, JIM DUNIGAN RUM OTF, MIKE COX Attorney General, JENNIFER GRANHOLM Governor, HEARING DIVISION SUPERVISOR JOHN STAPLETON, Attorney HARRIS-SPICER, SGT [illegible] OTF, ARUS BEECHER OTF and 10 Unknown John/Jan Doe(s) working in the Lansing Central Office and Public officials working for the State of Michigan.

The body of the grievance stated as follows:[11]

## BACKGROUND OF COMPLAINT

> This complaint stems from the malicious prosecution and retaliation committed against prisoner Reynolds for participating in protected activity/or/conducted [sic].  Originally a[n] investigation took place on September 2, 2004, but it wasn't until December 1st, 2004 before a retaliatory punishment was taken against Mr. Reynolds.

> The persons listed herein conspired to wit; [(1)] manufacture[] evidence; (2) conspired to fabricate the information; and (3) knowingly fil[ed] untrue charges against this prisoner for the sole purpose of punishing the prisoner, due to the filing of prior lawsuits filed against prison employees in federal court, grievance writing, family activity in protesting prison officials['] activities against them, and etc. [sic].  <See attached report>[.]

## RELIEF SOUGHT

> This prisoner seeks for this matter to be investigated, and for a monetary judgment in the amount of $100,000.00 dollars compensation and punitive damages of $500,000.00 dollars.

---

[11]Plaintiff's request for the respondent's assistance in identifying John and Jan Does has been omitted.

(docket # 32, Ex. 11).  The "attached report" referenced in the grievance was the December 1, 2004 major misconduct citation issued by ARUS Beecher against plaintiff for disobeying a direct order. (*Id.*).  This grievance could have been rejected on numerous grounds under Policy Directive 03.02.130, but it was rejected by the grievance coordinator at Step I because it was untimely. (docket # 80, Ex. 11).  Plaintiff pursued a Step II appeal.  Plaintiff's Step II appeal (*Id.* Ex. 12) acknowledged that two months had passed between the December first incident and the date plaintiff wrote grievance number OTF 05-02-00153-28E.  Plaintiff stated that he wrote to Deputy Director Straub on December 23, 2004, but did not include a copy of the correspondence with his Step II appeal.  Plaintiff did attach a form letter from Straub dated January 28, 2005.  Plaintiff argued that, when his correspondence with Straub and the fact of his transfer were considered, his grievance should have been processed.  (*Id.*).  Plaintiff's statement of his reason for appealing to Step II recited that plaintiff had attached to his Step I grievance hearing reports dated December 1, 2004 and December 16, 2004.  (docket # 80, Ex. 12; *see* docket # 1, Appendix C).  Plaintiff's statement of his reason for appeal had emphasized the two hearing reports.  The supervisor of the hearings division had been named in the grievance.  The warden apparently interpreted this as a challenge to hearing officers' decisions.  The Step II response indicated that this grievance should have been rejected because the hearing officers' decisions were non-grievable:

> The documentation you have provided for this Step II appeal shows Warden Warren as the recipient of correspondence from the Director's Office.  You offer no other documentation of the correspondence sent to the Director's Office dated 12-23-04.  The Step I grievance Coordinator rejected this grievance as untimely.  It is apparent that the grievance was filed as a result of the major misconduct process.  The grievance policy PD 03.02.130 is very clear when it states "Grievances that are non-grievable: Decisions made in hearings conducted by hearings officers of the Hearings and Appeals Division of the Office of Policy and Hearings."  I interpret this to mean any decisions made by that division.  I only find a violation of the

policy in that it was improperly coded by the Step I grievance coordinator.  This Step II appeal is denied.

(docket # 32, Ex. 7; docket # 80, Ex. 13).

Plaintiff pursued a Step III appeal.  (docket # 80, Ex. 12).  Plaintiff stated his reason for appeal at Step III was that he disagreed with the Step II response because his complaint made specific claims that were not related to the misconduct but to the reasons why the misconduct ticket had been written.  (docket # 32, Ex. 12).  The Step III response denying plaintiff's grievance is dated April 1, 2005:

> The grievant alleges that numerous listed staff manufactured false evidence, conspired to fabricate the false evidence and knowingly filed false charges against him and his family to punish him and retaliate against him for past lawsuits and grievances he had filed.  Grievant seeks as relief to receive a monetary judgment in the amount of $100,000 and punitive damages in the amount of $500,000.

> The issue was rejected at Step One as being untimely, because the incident was six months old and the grievant provided no explanation as to the delay in filing.

> Upon appeal to Step Two, the grievant indicates that he had attached to hearing reports dated 12-1-04 and 12-16-04, and he had also written to the Deputy Director in December regarding the issue.  Grievant also states that he was transferred during this time period, therefore the delay was justified.

> This investigator has reviewed the record presented with this appeal to Step Three.  All relevant information was considered.  The record indicates that on 12-16-04 the grievant was found not guilty of an insolence charge.  The charge involved documents which had been removed from the grievant's property which were related to the Uniform Commercial Code (UCC) and were suspected to be in violation of Director's Office Memorandum 2004-8.  The hearing officer made a specific finding that the grievant had used some inappropriate language in some of his document, however, it was determined that no intent to harass, abuse or degrade staff outside proper legal channels was shown.

> Dismissals/not guilty findings in major misconduct hearings are not considered proof of misconduct on the part of the author of the misconduct or on the part of any other staff.  The grievant has presented insufficient evidence from which to conclude that staff acted improperly or that their actions were retaliatory or punitive in nature.

The grievance appeal is denied.

(docket # 80, Ex. 14).

### (6)   Grievance Number OTF 05-06-00397-28E

On June 27, 2005, plaintiff filed Grievance Number OTF 05-06-00397-28E.  (docket # 1, Appendix B).  Plaintiff wrote that this grievance was a "complaint regarding retaliation [for] exercising First Amendment protected activity."  The grievance was against numerous individuals:

SUSANNE E. HARRIS-SPICER, LORI GIDLEY, KRICK, KURT JONES, MCMILLAN, TERRI HALFMAN, RICHARD STAPLETON, PATRICIA CARUSO, DENNIS STRAUB, DONNA SHAEFER, SCHAEFER CAPTAIN, JAMES ARMSTRONG, JIM DUNIGAN, NATHAN SMITH, PHILLIP GRAVELLE, CHERYL BELONGA, JOHN BOYTIN, JACKIE MALLORY, N. KILOUGH, CHRISTIANSEN CORRECTIONAL OFFICER, TABOR CORRECTIONAL OFFICER, KINGSBERRY CORRECTIONAL OFFICER, ENIKER, BEECHER, MIKE COX, MICHIGAN DEPARTMENT OF CORRECTIONS and (10) UNKNOWN JOHN/JAN DOE(s).

(*Id.*).  The body of  Grievance Number OTF 05-06-00397-28E is set forth verbatim below:

BACKGROUND
This complaint stems from retaliatory conduct perpetrated toward this prisoner and his family for exercising protected conducted [sic] in (the courts), (petitioning the government for redress) and (the deliberate fabrication of criminal charges) against said prisoner and his family.

Originally, on July 19th, 2004 Reynolds-members forwarded a letter of complaint regarding the treatment (Mr. Reynolds-Bey) was receiving from prison officials.  From that complaint Reynolds-members living in the community were targeted into silence from [sic] exercising protected speech.  Also, prison official received their petition on or about July 20 or 21, 2004, and sought to silence Reynolds-members July 19th, 2004 petition.

In the evening hours after reading Reynolds-members July 19th letter-of-complaint, Mr. Reynolds-Bey was called to the control center for a major misconduct.  At this hearing, prison officials formulated an elaborate scheme to accuse Reynolds-members and prisoner Reynolds-Bey of being part of a criminal escape plot, "based upon telephone conversations" between Reynolds-members, July 21, 2004 in a misconduct report and the verbal conversations rendered on this date [sic].

On September 2, 2004, prison officials confiscated legal pleadings as a continued retaliatory plan to fabricate criminal activity upon Reynolds-members in a prior lawsuit against prison officials in USDC case 2:01-cv-43. Specifically, there was a Motion to Disqualify the State Attorney General's Office (from representing prison officials in federal court). Attached was an Affidavit submitted by Patricia Reynolds supporting this motion, and Motion to Freeze Defendant's Assets (pending resolution of the lawsuit) in federal court.

Prison Officials to used these legal pleadings, that were filed in federal court to form the basis of retaliating and accusing this prisoner and his family of fraudulently litigating in federal court, and deemed their activity as criminal and was subject to arrest. These documents were turned over to the Attorney General's Office and Central Office for review. Subsequently, prison officials fabricated evidence that Reynolds-members were involved in criminal activity causing the unlawful placing of liens on prison officials property.

Also, prison officials intentionally instructed its prison officials [sic] to read prisoner Reynolds-Bey [sic] out-going legal-mail to his attorneys. This occurred on more than five different occurrences [sic], with prison officials reading the attorney-correspondences and then sharing the information with prison administration, as to what Mr. Reynolds-Bey [sic] legal communications were to his attorneys.

In short, prisoner Reynolds-Bey and Reynolds-members claim they were targeted for unequal treatment and racial targeting, based upon prison staff comments: "I don't like Niggers, . . . and litigants like you Reynolds [sic]."

## BRIEF CONCLUSION

The persons listed herein <u>conspired</u> to-wit: (1) manufactured false evidence; (2) conspired to fabricate the false information; (3) knowingly filing [sic] untrue charges and requesting to jail prisoner and his family upon criminal activity [sic]; (4) this conduct was done for the purpose of punishing Reynolds-members for protected activity for the filing of prior litigation against prison employees; (5) conspired to silence Reynolds-members petitions for redress and to retaliate against Reynolds-members to force them by coercion, intimidation and racial discrimination into silence; (6) conspire <u>to-wit</u> [sic] threaten Reynolds-members from continuing to exercise protected speech in federal court in making this protected activity criminal in nature; (7) simply punishing Reynolds-members reputation in the community and disenfranchising them as a means to discredit them professionally and businessly [sic].

## RELIEF REQUESTED

Reynolds-members seek for this matter to be investigated and for accountability. If this matter is not investigated at the first step, please forward a second step grievance form with

any rejection at the first level. Reynolds-members are attempting to avoid litigation at all costs and allow prison officials to do an internal investigation and remove those responsible.

Grievance Number OTF 05-06-00397-28E was rejected as untimely. (docket # 1, Appendix B). The grievance was denied as untimely at Steps II and III. The Step III decision is quoted below:

> The grievant presents an issue that was rejected at the local level as being untimely, in accordance with PD 03.02.130 "Prisoner Parolee Grievances".

> This investigator has reviewed the record presented with the appeal to Step Three. Upon further review of the documents presented, the record supports the Step One rejection of the grievance. Additional information has not been presented by the grievant to demonstrate an error in this determination. This decision is upheld at this level. Therefore, this grievance appeal is denied.

(docket # 1, Appendix B).

In determining that the exhaustion requirement of the PRLA requires "proper exhaustion," the Supreme Court relied in substantial measure on the habeas corpus procedural default doctrine. The Court recognized that, in the context of habeas corpus review, "the sanction for failing to exhaust properly (preclusion of review in federal court) is given the separate name of procedural default, although the habeas doctrines of exhaustion and procedural default 'are similar in purpose and implicate similar concerns ....' " *Woodford*, 126 S. Ct. at 2387 (quoting *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 7 (1992)). The Court therefore adopted the same sanction for failure to exhaust in the prisoner civil rights context as in the habeas context. *Id.* In the habeas context, application of procedural default principles is relatively straightforward because habeas corpus petitions generally challenge a single criminal conviction, and petitions are subject to rules designed to foster orderly habeas corpus review and preclude seriatim petitions. The grievances discussed in this section illustrate how prisoner grievances in general and "retaliation" grievances in particular evolve and expand rather than being focused on a single criminal conviction. This complicates the

-29-

court's task of applying procedural default principles in the process of enforcing the PLRA's requirement that a prisoner properly exhaust his available administrative remedies.

Under habeas review, to determine whether a petitioner procedurally defaulted a federal claim in state court, a court must consider whether (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir.2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir.2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir.2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir.2001). Plaintiff's grievances were patently untimely under Policy Directive 03.02.130. Michigan's interests in prompt resolution of prisoner grievances and avoiding stale prisoner complaints easily satisfies the "independent and adequate" component. The difficulty arises in the application of the second component to seriatim prisoner grievances. Here, plaintiff's first four grievances were rejected as untimely at Step I and affirmed on that basis at Steps II and III. Michigan had unquestionably enforced the procedural default rule and determined that plaintiff's grievances were time-barred. It is unreasonable that this default could be undone by the simple expedient of continuing to file grievances in the hope that at some point a mistake would be made in the grievance processing with regard to enforcement of the default. Such a rule would reward seriatim grievances and almost certainly undermine the State's ability to address prisoner grievances in a timely fashion. Plaintiff's fifth grievance was rejected as untimely at Step I. It was rejected on alternative grounds at Step II. The Step III response repeated the Step I and II responses but did not expressly rely on either when it denied plaintiff's grievance. Grievance

Number OTF 05-06-00397-28E was rejected as untimely at Step I and the plaintiff's procedural default was enforced through Step III of the grievance process.  This is the most recent decision by the administrative equivalent of the last state court rendering a judgment on the issue.  The procedural rule was enforced and every prerequisite for procedural default has been established.  Accordingly, I find that plaintiff did not properly exhaust his Count III claims and that his default precludes review of his claims in this court.

IV.     **Count IV**

A.     Allegations

In Count IV, plaintiff alleges that defendants Dunigan, Beecher, Jones, Mallory, Killough, and Christiansen "willfully and intentionally censor[ed] the attorney-client mail of Plaintiff, PHILLIP RYENOLDS, without probable cause to read said privilege[d] mail absent a warrant, in contravention of the doctrine of 'Attorney-Client' mail and/or speech of [the] First & Fourth Amendments of the United States."  (docket # 32, ¶ 63).  Plaintiff alleges that on September 2, 2004, defendants Dunigan, Beecher, and Christiansen conducted a "warrantless reading" of his "attorney-client" mail.  (*Id.* ¶ 63(d)).  Plaintiff's claims against Warden Jones, Litigation Coordinator Mallory, and CFA Administrative Assistant Killough is that they "condoned, authorized and/or encouraged, through its [sic] unlawful practices and/or policies to read Plaintiff's privileged attorney-client mail while seizing said correspondence during a search without probable cause nor any reasonable basis to assume said attorney(s) and Plaintiff had participated in illegal and/or criminal activities."  (*Id.*, ¶ 63(c)).

B.    Exhaustion of Administrative Remedies

Plaintiff did not properly exhaust his Count IV claims with regard to defendants alleged actions during the period of September through December 2004 for the reasons specified in Section III(B) of this report and recommendation. I find that defendants are entitled to judgment in their favor as a matter of law.

V.    **Count V**

A.    Allegations

In Count V, plaintiff alleges that in September 2004 defendant Dunigan violated plaintiff's First and Eighth Amendment rights by allegedly inducing prisoner Neloms to either assault or plant illegal evidence on plaintiff and by manufacturing the major misconduct charge of September 14, 2004, in retaliation for plaintiff's petition to OTF's warden "to investigate conspiracies by staff to plant illegal evidence in Plaintiff's property." (*Id.*, ¶ 65). Plaintiff alleges that Warden Jones, Deputy Warden Gidley, and Assistant Deputy Warden Krick conspired "to authorize and/or encourage, through action, inaction and or omission" defendant Dunigan's alleged actions. (*Id.*).

B.    Exhaustion of Administrative Remedies

For the reasons specified in Section III(B) of this report and recommendation, I find that plaintiff did not properly exhaust his Count V claims.

### VI.   Count VI

#### A.   Allegations

Count VI is a  retaliation claim against defendants Dunigan, Beecher, Mallory, Killough, Smith, Gravelle, Belonga, Boynton and Jones.  (docket # 32, ¶ 67).  Boytin, Smith, Belonga and Gravelle were all prevailing defendants in case no. 2:01-cv-43.  Plaintiff alleges that the two major misconduct citations he received on December 1, 2004 for disobeying a direct order (docket # 80, Ex. 9) and insolence (docket # 80, Ex. 7) were in retaliation for "his mother's litigation activities in a federal § 1983 civil rights lawsuit.  (*Id.* ¶ 67(b)).  Plaintiff was found not guilty on both misconduct charges.

#### B.   Exhaustion of Administrative Remedies

Plaintiff did not properly exhaust his Count VI claims for the reasons specified in Section III(B) of this report and recommendation.

### Recommended Disposition

For the reasons set forth herein, I recommend that plaintiff's motion for summary judgment (docket # 79) be denied, that defendants' motions for summary judgment (docket # 67, 73) be granted, and that plaintiff's claims against all defendants be dismissed with prejudice because plaintiff did not properly exhaust his claims.  If this report and recommendation is adopted, plaintiff's only remaining claims will be his Count I claims against non-moving defendant Kingsberry based on plaintiff's allegations that on June 21, 2004, Kingsberry subjected plaintiff to a racial epithet and subjected plaintiff to a search as plaintiff was exiting the prison's "chow hall,"

both purportedly in retaliation for the lawsuit of *Reynolds v. N. Smith, et al.*, 2:01-cv-43 (W.D. Mich.).

Dated:   April 8, 2008                    /s/  Joseph G. Scoville
                                          United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).